**THOMAS HANSEN**
105 Chapeg Street
Nederland, TX 77627
Phone (409) 300-1123
Email: thomasdhansen51@gmail.com

**ORIGINAL**

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2021 MAY 21  PM 2: 28

DEPUTY CLERK_____

*Pro Se Litigant*

IN THE UNITED STATES DISTRICT COURT
NOTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THOMAS HANSEN, | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CASE NO. 3:21-cv-1003-C-BN |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| Defendant. | § | |

## AMENDED COMPLAINT FOR DAMAGES UNDER THE FEDERAL TORT CLAIMS ACT

1. Plaintiff, THOMAS HANSEN, seeks compensatory damages pursuant to the Federal Tort Claims Act, 28 U.S.C. §§2671-2680, arising from Defendant, United States of America's (hereinafter "Defendant") negligence in failing to adhere to the prevailing professional standard of care which is generally recognized as acceptable and appropriate by reasonably prudent similar health care providers.

### Jurisdiction and Venue

2. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331 in that this action arises under the laws of the United States of America and is premised on the acts and omissions of the Defendant acting under color of federal law. This Court further has subject matter jurisdiction pursuant to 28 U.S.C. §1346(b), in that this is a claim against Defendant United State of America, for money damages, accruing on or after January 1st, 1945, for personal injury caused by the negligent and wrongful acts and omissions of employees of the Government while acting within the course and scope of their office or employment, under the circumstances where the Defendant, if a private person, would be Liable to the plaintiff.

Page 1 | 9

3.  Jurisdiction is founded upon federal law and is proper in that this action is premised upon federal causes of action under the Federal Tort Claims Act (hereinafter "FTCA"), 28 U.S.C. §2671, et seq.

4.  On 06.04.2020, Plaintiff's presented his FTCA Form 95 claim (Exhibit 1), to South Central Regional Office (SCRO), the appropriate federal agency for administrative settlement in the amount of $25,000.00.  By letter dated June 15th, 2020 (Exhibit 2), SCRO acknowledged the receipt of Plaintiff FTCA claim (Claim #TRT-SCR-2020-05097), informing him he would receive a response within the six (6) month time frame as the "Act" requires, on or before November 30th, 2020.  Upon receiving no response within the above-referenced time frame, by letter dated December 12th, 2020 (Exhibit 3), Plaintiff requested the "status" to TRT-SCR-2020-05097, from SCRO. By letter dated January 25th, 2021 (Exhibit 4), Plaintiff's claim (Claim #TRT-SCR-2020-05097) was denied by SCRO by certified mail. Plaintiff's FTCA complaint for damages was then timely filed in this Court pursuant to 28 U.S.C. § 2401(b), in that it was presented to SCRO within the two-years of accrual, and this action was filed within six months of receipt of the certified letter from SCRO denying Plaintiff's claim. 1/

5.  Venue is proper pursuant to 28 U.S.C. §§ 1391(b) and (c), as Defendant does business in this judicial district and the events or omissions giving rise to the Plaintiff's claims occurred in this judicial district.

---

1/ Plaintiff hand-delivered his Informal Resolution Grievance Complaint ((IRGC), Form BP8) dated 08.20.2018, to Case Mgr., Ingram (Exhibit 5), in accordance with BOP Administrative Remedy (AR) Program Statement 1330.18. However, before Plaintiff could continue with his AR exhaustion requirement process, was hospitalized on 08.30.2018 at Dallas Regional Medical Center (DRMC), in the Infectious Disease Unit (IDU), receiving Intensive Care Treatment (ICT), due to severity of his Staph MRSA infection not being properly treated at the Institutional level. Further, Plaintiff was then transferred and admitted on 09.07.2018 to Vibra Specialty Hospital (VSH) to continue with his ICT through a surgically implanted pick line, and surgery to removed infected tissue caused by MRSA.  On 09.24.2018, Plaintiff was discharged returning back to FCI Seagoville. There, Plaintiff inquired about the status of his AR BP8 process to Case Mgr., Ingram, who stated he had no knowledge of what happen to the BP8.  Plaintiff requested another BP8 from Case Mgr., Ingram in order to start the process over, and was told and it was too late to refile, when Plaintiff objected requesting a new BP8, was told to leave the office. First, as a result of Plaintiff's hospitalization, it was physically impossible to follow through with his required AR process. Second, Case Mgr., Ingram refusal to give Plaintiff a new BP8 was an outright denial of Plaintiff's rights to redress his grievances.  Plaintiff respectfully request a waiver due to the special circumstances as outlined above and surrounding Plaintiff's medical situation.

Page 2 | 9

**PARTIES**

6. Plaintiff, Thomas Hansen, resides at 105 Chapeg Street, Nederland, TX 77627.

7. At all times material to this action, Plaintiff was in the custody of the Bureau of Prisons (BOP) at the FCI Seagoville, Seagoville, Texas, a correctional facility owned and operated by the Defendant.

8. Defendant is subject to suit for the personal injuries caused by the negligent and wrongful acts and omissions of these BOP employees of the U.S. Government while acting within the course and scope of there office or employment, under the circumstances where the Defendant, if a private person, would be liable to the plaintiff pursuant to the FTCA.

9. At all times material to this action, Defendant was responsible for the correct and prompt response to the health care needs of inmates in its custody.

10. At all times material to this action, Mr. Hansen was an inmate subject to the custody and control of the Defendant and subject to the care and treatment by the Defendant for any and all medical evaluation and treatment.

11. At all times material to this action, if Plaintiff required medical evaluation or treatment, his only avenue was to rely on the medical evaluation and treatment provided by the Defendant.

**STATEMENT OF CLAIM**

13. On 08.17.2018, when claimant awoke Friday evening at 6:30pm, he noticed a very red, painful and inflamed pimple on the upper right calf are had formed. Claimant requested permission to go to Health Services for medical help from the evening officer working Housing Unit-E, and was told medical is closed until Monday for sick call.

14. On 08.18.2018, when claimant awoke Saturday morning, he notices the pimple had grown during the night into a significant sore in both size, irritation and oozing a yellowish fluid indicative to a Staph Infection (MRSA). When pill line was announced that morning, claimant reported to the pill line window requesting medical help for his infected sore and  was instructed by  pill line staff to report to sick call on

Page 3 | 9

Monday. Claimant returned again to pill line when announced at noon and that evening requesting medical help and instructed again to report to sick call on Monday morning.

15. On 08.19.2018, when claimant awoke Sunday morning, the sore had grown in size again, with the outer edges gaining in redness, hardness and soreness, with an increase in seepage. Claimant went to pill line requesting medical help for his sore, and again was instructed to go to sick call on Monday. Claimant again repeated his request for medical help from pill line staff at noon and that evening, and again instructed to report to sick call Monday morning.  As outlined in Statement of the Claims 13, 14 & 15, Plaintiff was denied medical care for over sixty (60) hours.

16. On 08.20.2018, claimant went immediately to sick call Monday morning.  There, claimant was examined by Nurse Practitioner Brockman (NP Brockman), and upon seeing the size, degree and scope of the infection asked claimant why he didn't report to sick call sooner. Claimant explained that his medical issue started Friday evening at approximately 6:30pm and was told by the evening shift officer working housing Unit-E (See, Statement 1), there was no medical services available for inmates during the weekend. NP Brockman acted irritated upon hearing claimant was denied access to Health Service's for medical attention throughout the weekend by these different staff members as outlined in statements 1, 2 & 3, by their noncompliance with numerous BOP policies, protocols, and procedures including inmates rights which provide **(a)** claimant having access to Health Services (HS) medical staff 24-hours a day, seven-days-of-week for medical help; **(b)** claimant having medical staff assess his medical problem/symptom's; and **(c)** medical staff consulting with the on-call medical staff member (NP Brockman), with claimant's symptoms' in order to be prescribed necessary and immediate treatment/care of claimant's Staph (MRSA) infection. NP Brockman apologized to claimant for having to wait throughout the weekend and having to wait so long at sick call when he realized how advanced and painful claimant's staph infection had become. NP Brockman immediately prescribed a prescription of antibiotics for fourteen days. NP Brockman instructed claimant to

Page 4 | 9

request additional materials to keep the infected wound area clean from the nursing staff as needed, and took a culture sample of the secreting materials to be sent for testing confirming MRSA

17.  On 08.23.2018, claimant awoke feeling physically and extremely ill, nausea, chills, shaking, and could not eat, spending the day in bed with barely enough strength to walk to pill line for his prescribed medication. While there, claimant requested from pill-line medical staff cleaning supplies to keep the infected area clean per NP Brockman's instructions on 08.20.2018 and was denied instructing claimant to request the needed supplies from pharmacy.  Claimant was forced to use toilet paper and old towels to clean the wound and discharge.

18. On 08.27.2018, claimant requested again cleaning supplies from pharmacy as he had been instructed to do on 08.20.2018, and was instructed to ask Nurse rills who was on duty.  Finally, after much searching, claimant found Nurse Rills and requested assistance explaining he needed cleaning supplies and outlining the instructions given to claimant by both NP Brockman on 08.20.2018, and pill line staff on 08.23.2018.  Nurse Rills denied claimant's request for much-needed medical supplies, quickly stating they don't supply and medical supplies to inmates.  Claimant then requested Nurse Rills to look at claimant's wound to see that claimant was in dire need of medical cleaning supplies in order to keep-the infected area clean, and she still refused to do so. Claimant again, informed Nurse Rills that NP Brockman instructions to claimant was to obtain the medical cleaning supplies from medical staff. Nurse Rills then said "I'll see about that" and told claimant to wait.  When Nurse Rills returned, she stated NP Brockman had no recollection of instructing claimant to obtain cleaning supplies from medical staff. Nurse Rills then instructed claimant to leave medical.

19. On 08.28.2018, claimant returned to sick call to report not getting any medical cleaning supplies, worsening health condition and Staph infection spreading throughout claimant's leg.  Claimant infected leg was examined by nurse practitioner Ratcliff (NP Ratcliff), who then became seriously concerned how quickly and advanced claimant's infection had become.   NP Ratcliff immediately placed a phone call to consult with

Page 5 | 9

another medical professional, where claimant was then scheduled additional injections over the next three (3) days, and instructed to NP Brockman on Friday 08.31.2018. Finally, claimant received the much-needed medical supplies to properly treat, clean and cover the infection. However, still nothing was done to address the disposal of claimant's infected materials or protecting other inmates in housing Unit E, or those inmate's claimant shared a cell in with or the general population from contracting the Staph (MRSA) infection.

20. On 08.30.2018, claimant was placed on the call-out roster to report to sick call at 7am. There, approximately at 9am, NP Brockman and NP Ratcliff examined claimant's infection and physical status and due to their concerns, requested Dr. Halla's assistance. Upon Dr. Halla's examination, immediately knew and stated that the claimant's condition had become critical and far past the abilities of the institution to properly treat claimant's Staph infection. Claimant was informed that he would now be provided the necessary medical treatment immediately. That afternoon, claimant was transported to the ER at Dallas Regional Medical Center (DRMC), and was immediately administered IV fluids and antibiotic medications, including blood samples, chest x-rays, urine samples and a complete medical work-up was initiated.

21. On 08.31.2018, Dr. Carroll, the attending physician, informed claimant his condition was quite serious and should've been hospitalized much sooner. Dr. Carroll explained the procedures and treatments claimant would be receiving while hospitalized at DRMC. Dr Carroll then informed claimant to the issues surrounding the abnormal functions with claimant's liver, kidneys and the overall deteriorated condition of claimant's health.

22. On 09.01.2018 through 09.13.2018, Plaintiff received additional IV medical treatment due to Dr. Carrol's concerns surrounding the abnormal functions outlined in statement 21 above, including respiratory treatments and monitoring claimant's kidney and liver functions.

23. On 09.04.2018, due to the inflammation in claimant's testicles, required an ultra sound exam and medical treatments for urinary difficulties. Further, Ms. Williams, the officer on duty, who was not only uncooperative in allowing claimant to use the restroom when claimant was experiencing extreme pain but

Page 6 | 9

threatened claimant when claimant couldn't lie down in the hospital bed due to the pain. Finally, claimant was forced to call the nurse for assistance.

24. On 09.07.2018, claimant was transferred to Vibra Specialty Hospital (VSH) for continued treatments and rehabilitation. There, claimant received a surgically implanted pick-line to administer the IV fluids. Further, due to the inflammation in claimant's testicles, required an ultra sound exam and medical treatments for urinary difficulties. Further, Ms. Williams, the officer on duty, who was not only uncooperative in allowing claimant to use the restroom when claimant was experiencing extreme pain but threatened claimant when claimant could not lie down in the hospital bed due to the pain. Finally, claimant was forced to call the nurse for assistance.

25. On 09.24.2018, claimant was discharged returning back to FCI-Seagoville, Texas.

26. As a result of Defendant's failure to properly/correctly diagnose and timely treat claimant's Staph (MRSA) infection, Mr. Hansen endured unnecessary pain and suffering and was required to be transported to DRMC for urgent elevated medical care.

27. Defendant has in its employ and/or agency doctors, nurses and other medical care providers, over which it exercises control and supervision. At all times material to this action, Defendant authorized each of these agents and its employees to act for Defendant when they committed the negligent acts alleged herein. Defendant's agents and employees accepted the undertaking of acting on behalf of Defendant when they committed the negligent acts herein.

28. The negligent acts of Defendant's agents and employees were committed while acting within the course and scope of their employ and/or agency with Defendant. Thus, Defendant is vicariously liable for the actions, omissions and/or failures of its agents and employees when they committed the negligent acts alleged herein.

29. At all times material to this action, Defendant had a non-delegable duty to provide Plaintiff, Mr. Hansen, with reasonable medical care. Accordingly, Defendant is also vicariously liable for the actions of

Page 7 | 9

contracted-with medical providers.

30. At all times material to this action, Defendant, by and through its staff, physicians, employees and/or agents, acting within the course and scope of their employment and/or agency, undertook a duty to render medical care to Plaintiff, in a skillful and careful manner and in accordance with the accepted standards of medical care and treatment rendered in such cases by physicians in Dallas County, Texas or in any similar medical community.

31. At all times material to this action, Defendant, by and through its staff, physicians, employees and/or agents, acting within the course and scope of their employment and/or agency, negligently breached the duty of care owed to Plaintiff, by failing to examine, diagnose, care for, and treat Mr. Hansen in accordance with the accepted standards of care.

32. The care and treatment of the Plaintiff, Mr. Hansen, by the Medical staff of the Defendant BOP at FCI-Seagoville, fell below the prevailing standard of professional care for a primary care physician in one or more of the following ways:

a. Failure to timely, fully and properly document STAPH symptoms, despite repeated visits to the Defendant's Health Care Providers; and

b. Failure to properly consider and/or diagnose the Plaintiff's excruciating and severe pain despite repeated visits to the Defendants Health Care Providers.

33. As the direct and proximate result of the failure of Defendant's medical staff at FCI-Seagoville to properly diagnose and treat Plaintiff's STAPH, Plaintiff:

a. suffered severe and excruciating pain;

b. was on IV antibiotics; and

c. suffered liver and kidney damage and testicle inflammation along with general deterioration of health.

34. It is more likely than not that if Plaintiff had been timely and properly treated when he first presented with STAPH indication, the need for transfer to DRMC for elevated, urgent medical care and treatment would have been unnecessary.

35. As the direct and proximate result of the negligence, carelessness, and medical malpractice of the Defendant's employees and contractors, Plaintiff has suffered pain, mental anguish, bodily injury, and permanent disability, and will continue to suffer pain, mental anguish, bodily injury, and permanent disability in the future.

36. WHEREFORE Plaintiff, Mr. Hansen, demands judgment against Defendant, United States of America, as follows:

    a. The sum of $25,000.00 or more;

    b. Costs of suit;

    c. Post-Judgment interest; and

    d. Such other relief as the court may deem just and proper.

Dated this __20TH__ day of ____MAY____, 2021.

Respectfully Submitted,

By: _____

**THOMAS HANSEN**
Plaintiff Pro Se
105 Chapel Street
Nederland, TX 77627
Phone (409) 300-1123
Email: Thomasdhansen51@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that on __20TH__ day of ____MAY____, 2021, I forwarded by regular mail a true and correct copy of Plaintiff's AMENDED Federal Tort Claims Act Complaint addressed to: U.S. Attorney's Office, Northern District of Texas, Earle Cabell Federal Building, 1100 Commerce Street, Suite 300, Dallas, Texas 75242-1699.

By: _____
**THOMAS HANSEN**

# EXHIBIT 1

# EXHIBIT 1

# EXHIBIT 1

Date: 06.04.2020

Reply To
  Attn of:  Tom Hansen
            105 Chapeg Street
            Nederland, TX 77627
            Phone (409) 300-1123
            Email:thomasdhansen51@gmail.com

  Subject:  **Written Notice Requirements;**
            **Notice of Claim for Damages under the Federal Tort Claims Act (FTCA); and**
            **FTCA Form 95 & Attached Statement of Facts**

       To:  South Central Regional Office
            Federal Bureau of Prisons
            344-Armed Forces Drive, #300
            Grand Prairie, TX 75051
            Phone (972) 730-8600

Pursuant to the FTCA "Written Notice Requirements" ((WNR), 28 USC §2675(a)), enclosed please find the above-subject matter documents for processing. Further, pursuant to the Act and its processing protocols, requires this office to forward to me and acknowledgement letter of my FTCA Form 95 coupled with the FTCA tracking number thereto and returned to me for my records.

Pursuant to my above-subject matter FTCA Form 95 administrative claim against the U.S. Government for the wrongful and/or negligent acts of certain BOP Correctional Staff for (a) denying me access to Health Services for sixty (60±) hours; and (b) Certain Health Services Medical Staff's mistakes in treating my Staph infection prematurely. As a result of (a) & (b), I was hospitalized with severe medical problems, kidneys and liver malfunctions, etc., notwithstanding the undue severe pain and suffering caused by the negligent and wrongful acts of these BOP staff set forth in the attached statement of facts.

Thank you for your full cooperation in processing my FTCA Form 95, including your response within six (6) month time frame requirement to your decision.

File

**CLAIM FOR DAMAGE, INJURY, OR DEATH**

Submit to Appropriate Federal Agency:

INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) i necessary. See reverse side for additional instructions.

FORM APPROVED
OMB NO:1105-0008

South Central Regional Office
Federal Bureau of Prisons
344 Armed Forces Drive, #300
Grand Prairie, TX 75051
Phone (972) 730-8600

2. Name, Address of claimant and claimant's personal representative, i any. ((See instructions on reverse) number, street, city, State & Zip Code)

TOM HANSEN
105 Chapeg Street
Nederland, TX 77627

| TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5- MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| MILITARY    CIVILIAN | 07/29/1951 | | 08/17/2018 | 6:30pm |

Basis of Claim *(State in detail the known facts and circumstances attending the damage, injury or death, identifying persons and property involved, the place of occurrence and the cause thereof (Use additional pages if necessary.)*

STATEMENT OF FACTS ATTACHED

SF 95-109
Page 1 of 3

STANDARD FORM 95 (Rev. 7-85)
28 CFR 14.2

# Statement of Facts

1. On 08/17/2018, when claimant awoke Friday evening at 6:30pm, he noticed a very red, painful and inflamed pimple on the upper right calf area had formed. Claimant requested permission to go to Health Services for medical help from the evening officer working Housing Unit-E, and was told medical is closed until Monday for sick call.

2. On 08/18/2018, when claimant awoke Saturday morning, he notices the pimple had grown during the night into a significant sore in both size, irritation and oozing a yellowish fluid indicative to a Staph Infection (MRSA). When pill line was announced that morning, claimant reported to the pill line window requesting medical help for his infected sore, and was instructed by pill line staff to report to sick call on Monday. Claimant returned again to pill line when announced at noon and that evening requesting medical help, and instructed again to report to sick on Monday morning.

3. On 08/19/2018, when claimant awoke Sunday morning, the sore had grown in size again, with the outer edges gaining in redness, hardness and soreness, with an increase in seepage. Claimant went to morning pill line requesting medical help for his sore, and again was instructed to go to sick call on Monday. Claimant again repeated his request for medical help from pill line staff at noon and that evening, and again instructed to report to sick call Monday morning. As a result of 1,2-3, I was denied medical care for sixty (60±) hours!

4. On 08/20/2019, claimant went immediately to sick call Monday morning. There, claimant was examined by Nurse Practitioner Brockman (NP Brockman), and upon seeing the size, degree and scope of the infection asked claimant why he didn't go to sick call sooner. Claimant explained that his medical issue started Friday evening at approximately 6:30pm, and was told by the evening shift officer working housing Unit-E (_See_, statement 1), there was no medical services available for inmates during the weekend. NP Brockman acted irritated upon hearing claimant was denied access to Health Service's for medical attention throughout the weekend by these different staff members as outline in statements 1, 2 & 3, by their noncompliance with numerous BOP policies, protocols, and procedures including inmates rights which provides **(a)** claimant having access to Health Services (HS) medical staff 24-hours a day, seven-days a-week for medical help; **(b)** claimant having medical staff assess his medical problem/symptom's; and **(c)** then medical staff consulting with the on-call medical staff member (NP Brockman), with claimant's symptoms' in order to be prescribed necessary and immediately treatment/care of claimant's Staph (MRSA) infection. NP Brockman apologized to claimant for having to wait throughout the weekend, and having to wait so long at sick call when he realized how advanced and painful claimant's staph infection had become. NP Brockman immediately prescribed antibiotic's fourteen-day prescription. NP Brockman instructed claimant to request additional materials to keep the infected wound area clean from the nursing staff as needed, and took a culture sample of the secreting materials to be sent for testing confirming MRSA.

5.  On 08/23/2018, claimant awoke filling physically and extremely ill, nausea, chills, shaking, and could not eat, spending the day in bed with barely enough strength to walk to pill line for his prescribed medication. While there, claimant requested from medical pill-line staff cleaning supplies to keep the infected area clean per NP Brockman instructions on 08/20/2018, and was denied instructing claimant to request the needed supplies from pharmacy.  Claimant was forced to used toilet paper and old towels to clean the wound and discharge.

6.  On 08/27/2018, claimant requested again cleaning supplies from pharmacy as he had been instructed to do on 08/20/2018, and was instructed to ask Nurse Rills who was on duty. Finally, after much searching, claimant found Nurse Rills and requested assistance explaining claimant's needing cleaning supplies and outlining the instructions given to claimant by both NP Brockman on 08/20/2018, and pill line staff on 08/23/2018.  Nurse Rills denied claimant's request for the much-needed medical supplies, quickly stating they don't supply any medical supplies to inmates. Claimant then requested Nurse Rills to look at claimant's wound to see that claimant was in deed of medical cleaning supplies in order to keep the infected area clean, and she refused to do so. Claimant again, informed Nurse Rills that NP Brockman instructions to claimant was to obtain the medical cleaning supplies from medical staff.  Nurse Rills then said "I'll see about that" and told claimant to wait. When Nurse Rills returned, she stated NP Brockman had no recollection of instructing claimant to obtain cleaning supplies from medical staff.  Nurse Rills then instructed claimant to leave medical.

7.  On 08/28/2018, claimant returned to sick call to report not getting any medical cleaning supplies, worsening health condition and Staph infection spreading throughout claimant's leg. Claimant infected leg was examined by nurse practitioner Ratcliff (NP Ratcliff), who then became seriously concerned about how advanced claimant's infection had become.  NP Ratcliff immediately placed a phone call to consult with another medical professional, where claimant was then scheduled additional injections over the next three (3) days, and instructed to see NP Brockman on Friday 08/31/2018.  Finally, claimant received the much-needed medical supplies to properly treat, clean and cover the infection. However, still nothing was done to address the disposal of claimant's infected materials, or protecting other inmate's claimant shared a cell with or the general population from contracting the Staph (MRSA) infection; amend to add inmate of housing Unit E also.

8.  On 08/30/2018, claimant was placed on the call out roster to report to sick call at 7am. There, at approximately 9am, NP Brockman and NP Ratcliff examined claimant's infection and physical status, and due to their concerns, requested Dr. Halla's assistance. Upon Dr. Halla's examination, immediately knew and stated that claimant's condition had become critical and far past the abilities of the institution to properly treat claimant's staph infection. Claimant was informed that he would now be provided the necessary medical treatment immediately.  That afternoon, claimant was transported to and admitted at, the Dallas Regional

Medical Center (DRMC).   On admission, claimant was immediately administered IV fluids with antibiotic medications, including blood samples, chest x-rays, urine samples and a complete medical work-up was initiated.

9.   On 08/31/2018, Dr. Carroll, the attending physician, informed claimant his condition was quite serious and should have been hospitalized much sooner. Dr. Carroll explained the procedures and treatments claimant would be receiving while hospitalized at DRMC.  Dr. Carroll then informed claimant to the issues surrounding the abnormal functions with claimant's liver, kidneys and the overall deteriorated condition of claimant's health.

10.   On 09/01/2018 through 09/13/2018, claimant was hospitalized at DRMC receiving IV medicated treatment including respiratory treatments and monitoring claimant's kidney and liver functions.

11.   On 09/04/2018, at DRMC, due to the inflammation in claimant's testicles, required an ultra sound exam and medical treatments for urinary difficulties. Further, Ms. Williams, the officer on duty, who was not only uncooperative in allowing claimant to use the restroom when claimant was experiencing extreme pain, but threatened claimant when claimant could not lie down in the hospital bed due to the pain. Finally, claimant was forced to called the nurse for assistance.

12.   On 09/14/2018, claimant was transferred to Vibra Specialty Hospital (VSH) for continued treatments and rehabilitation. There, claimant received a surgically implanted pic-line to administer the IV fluids. Further, due to the inflammation in claimant's testicles, required an ultra sound exam and medical treatments for urinary difficulties. Further, Ms. Williams, the officer on duty, who was not only uncooperative in allowing claimant to use the restroom when claimant was experiencing extreme pain, but threatened claimant when claimant could not lie down in the hospital bed due to the pain.  Finally, claimant was forced to called the nurse for assistance.

13.   On 09/24/2018, claimant was discharged returning back to FCI-Seagoville, Texas.

PROPERTY DAMAGE

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT *(Number, street, city State and Zip Code)*

## NOT APPLICABLE

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. *(See instructions on reverse side.)*

## NOT APPLICABLE

10.                                   PERSONAL INJURY/WRONGFUL DEATH
STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH. WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

1. **Denied Medical Care for sixty (60±) hours delaying treatment Claimant's MRSA resulting in transfer to outside hospital medical care and treatment intervention.**

11                                                                    WITNESSES

NAME                                          ADDRESS *(Number, street, city, State and Zip Code,*

See BOP Health Services Medical Records as to the dates, times, facilities, staff & outside medical personnel, pertaining to Statements 1 thru 14 attached.

**See block 8,11 & Statement of Facts**

| 12. *(See instructions on reverse)* | AMOUNT OF CLAIM *(in dollars)* | | |
|---|---|---|---|
| 12a.PROPERTY DAMAGE | 12b.PERSONAL INJURY | 12c.WRONGFUL DEATH | 12d.TOTAL *(Failure to specify may cause Forfeiture of your rights.)* |
| NOT APPLICABLE | $25,000.00 | NOT APPLICABLE | $25,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a.SIGNATURE OF CLAIMANT *(See instructions on reverse side.)* | 13b.Phone number of signatory | 14. DATE OF CLAIM |
|---|---|---|
| | (409) 300-1123 | 06/04/2020 |

CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM

The claimant *shall* forfeit and pay to the United States the sum of no less than $5,000 and no more than $10,000, plus 3 times the amount of damages sustained by the United States. *(See 31 U.S.C. 3729)*

CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS

Imprisonment for not more than 5 years and shall be subject to a fine of not less than $5,000 and not more $10,000, plus 3 times the amount of damages sustained by the United States. *(See 18 U.S.C. 287, 1001).*

NSN 7540-00-634-4046
Previous editions not sable

SF 95-109
Page 2 of 3

STANDARD FORM 95 (Rev. 7-85)
28 CFR 14.2

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U S C 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.

A *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 at seq., 28 U.S.C. 2671 et seq.   28 C F R Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims

C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.

D *Effect of failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

## INSTRUCTIONS

### Complete all items - Insert the word NONE where applicable

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A SUM *CERTAIN* FOR INJURY TO OR LOSS OF

PROPERTY, PERSONAL INJURY OR DEATH ALLEDGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM *MUST BE* PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN *TWO YEARS* AFTER THE CLAIM ACCRUES.

Any instructions or information necessary in the preparation of your claim will be furnished, upon request, by the office indicated in item #1 on the reverse side. Complete mutations pertaining to claims asserted under the Feder' Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplemental regulations also. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative provided evidence satisfactory to the Government is submitted with said claim establishing express authority to act for the claimant A claim presented by an agent *or legal* representative must be presented in the name of the claimant If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative

If claimant intends to file cam for both personal injury and property damage, claim for both must be shown in item 12 of this form.

The amount claimed should be substantiated by competent evidence as follows

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property which has been or can be economically repaired, the claimant should submit at least two itemized signed statements o estimates by reliable, disinterested concerns, or if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, of the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

08 Failure to completely execute this form or to supply the requested material within two years from the date the allegations accrued may render your claim "invalid". A claim is deemed presented when it is received by the appropriate agency, not when it mailed

**Failure to specify a sum certain will result in invalid presentations of your claim and may result in forfeiture of your rights.**

---

Public reporting burden for this collection of information is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to:

Director, Torts Branch
Civil Division
U S Department of Justice
Washington, DC 20530

Office of Management and Budget
Paperwork Reduction Project (1105-0008)
Washington, DC 20503

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of this vehicle or property.

15. Do you carry accident insurance? _____ Yes. if yes, give name and address of insurance company *(Number. street, city, State and Zip Code) and policy number.*  **NO**

## NOT APPLICABLE

16 Have you filed claim on your insurance carrier in this instance, and if so, is it full coverage or deductible?    17. If deductible, state amount.

## NOT APPLICABLE

18. If claim has been filed with your carrier, what action has your insurer taken or proposes to take with reference to your claim? *(If is necessary that you ascertain these facts)*

## NOT APPLICBLE

19 Do you carry public liability and property damage insurance? _____ Yes. if yes, give name and address of insurance carrier *(Number, street, city State, and Zip Code)*    No

---

NSN 7540-00-634-4048 Previous editions not usable

SF 95-109
Page 3 of 3

STANDARD FORM 95 (Rev. 7-85)
28 CFR 14 2

# EXHIBIT 2

# EXHIBIT 2

# EXHIBIT 2



**U.S. Department of Justice**

Federal Bureau of Prisons

South Central Regional Office

*U.S. Armed Forces Reserve Complex*
*344 Marine Forces Drive*
*Grand Prairie, TX   75051*

JUN 15 2020

Thomas Hansen
Register Number 22988-078
105 Chapeg Street
Nederland, Texas 77627

Re:  Administrative Tort Claim - TRT-SCR-2020-05097

Mr. Hansen:

This acknowledges our receipt of your claim dated June 4, 2020.
The Federal Bureau of Prisons received the claim for processing
on June 1, 2020.

Claims processed pursuant to the Federal Tort Claims Act
normally receive a response within six months.  Accordingly, you
may expect a response from this office on or before November 30,
2020.

Please note it is your responsibility to keep us updated with
your correct current address.

Sincerely,

Jason A. Sickler
Regional Counsel

JAS/bkv

# EXHIBIT 3

# EXHIBIT 3

# EXHIBIT 3

Date: 12.05.2020

*[signature: Thomas D Hansen]*

Reply To
 Attn of: Tom Hansen
          105 Chapeg Street
          Nederland, TX 77627
          Phone (409) 300-1123
          Email: thomashansen51@gmail.com

  Subject: Administrative Tort Claim – TRT-SCR-2020-05097 - **Claimant request for Reconsideration**
           USDOJ/BOP June 15th, 2020, acknowledgment letter - Response due November 30th, 2020

      To: U.S. DEPARTMENT OF JUSTICE
          Federal Bureau of Prisons
          South Central Regional Office
          U.S. Armed Forces Reserve Complex
          344 Marine Forces Drive
          Grand Prairie, TX 75051
          Phone (972) 730-8600

Pursuant to your June 15th, 2020, acknowledgement letter a response from this agency was due on or before November 30th, 2020. Accordingly, I haven't received your response denying my FTCA claim with written reasons for your decision. Although, as the act outlines, if I haven't received a response within that allotted time frame, I can accept a no response as a final denial an proceed in Federal Court.

However, South Central Regional Office has always taken the time and patience on other issues while I was incarcerated, notwithstanding the kindness in the way I was treated including guidance.

Therefore, I respectfully request from Regional Counsel a copy of the written decision and the reasons to my claim.

Also, I respectfully request reconsideration from this agency's final denial pursuant to 28 C.F.R. §14.9(b).

Thank you for your time and consideration, and looking forward hopefully to a favorable reply, I remain, respectfully.

file

# EXHIBIT 4

# EXHIBIT 4

# EXHIBIT 4



**U.S. Department of Justice**
Federal Bureau of Prisons
*South Central Regional Office*

U.S. Armed Forces Reserve Complex
344 Marine Forces Drive
Grand Prairie, Texas 75051

Date Mailed:    **JAN 2 5 2021**
VIA CERTIFIED MAIL # ^ o ː̈ ʊ 3̣ ʊ o ʊ o o o 7 S ʕ 7 3 3 ʕ̃

Thomas Hansen
105 Chapeg Street
Nederland, TX    77627

Re:    HANSEN, Thomas; Reg. No. 22988-078 (released)
       Administrative Claim No. TRT-SCR-2020-05097

Mr. Hansen:

Your claim has been investigated and considered for administrative settlement under the Federal Tort Claims Act, Title 28, United States Code, Section 2671 *et seq.*, and authority granted by Title 28, Code of Federal Regulations, Section 0.172.  You claim government liability for personal injury damages in the amount of twenty-five thousand dollars ($25,000).

The Federal Tort Claims Act § 2672 delegates to each Federal agency the authority to consider, determine and settle any claim for money damages against the United States for loss of personal property or injury caused by the negligent or wrongful act or omission of any employee of the agency while acting within the scope of his office or employment.

You claim you were denied medical care for 60 hours and you state your belief that such alleged delay caused your transfer to an outside hospital for treatment.  An investigation into your claim revealed there is no evidence to indicate you sustained any injuries caused by the negligent or wrongful act or omission of any government employee acting within the scope of employment. Medical care provided to you was timely and appropriate.   Therefore, your claim is denied.

You are advised that if you are dissatisfied with our determination in this matter, you are afforded six months from the date of the mailing of this communication within which to bring suit in the appropriate United States District Court.

Sincerely,

**JASON SICKLER** Digitally signed by JASON SICKLER
Date: 2021.01.15 15:59:50 -06'00'

Jason A. Sickler
Regional Counsel

cc:   K. Zook, Warden, FCI Seagoville

# EXHIBIT 5

# EXHIBIT 5

# EXHIBIT 5

SEA 1330.17(a)
Administrative Remedy Program
December 1, 2012
Attachment 1

## Federal Correctional Institution
### Seagoville, Texas

### Administrative Remedy Procedures for Inmates
### Informal Resolution Form

Bureau of Prisons Program Statement 1330.17, <u>Administrative Remedy Program</u>, requires, in most cases, that inmates attempt informal resolution of grievances prior to filing a formal written complaint.  This form will be used to document our efforts toward informally resolving your grievance.   Complete items 1-3 and return to your Correctional Counselor.

**INMATE'S COMPLAINT:**

State your specific complaint: I WAS INSTRUCTED by NURSE PRACTIONER BROCKMAN TO REQUEST SUPPLIES FOR MRSA INFECTION AND WOUND CARE FROM NURSE AS NEEDED. ON 9-27 I ASKED NURSE RILES FOR SUPPLIES WHO STATED "WE DO NOT GIVE SUPPLIES TO INMATES". I EXPLAINED MR BROCKMAN INSTRUCTED ME TO DO THIS. I OFFERED TO SHOW HER THE SEVERITY OF MY INFECTION WHICH SHE REFUSED. SHE WAS OBVIOUSLY DISTURBED BY MY REQUEST, TOOK MY NAME AND SAID "WE WILL SEE ABOUT THIS" AND DEPARTED. RETURNING A FEW MINUTES LATER SHE TOLD ME MR. BROCKMAN "NEW NOTHING ABOUT THIS" (SEE AAC

State what efforts you have made to informally resolve your complaint:

FILING THIS REMEDY REQUEST.

State what resolution you request:
I HAVE NEVER ACTED OR SPOKE TO ANY STAFF MEMBER IN A RUDE, DISRESPECTFUL OR DEROGATORY MANNER AND EXPECT THE SAME BY PRISON PERSONNEL. WHEN INSTRUCTIONS AND ORDERS ARE GENERATED BY MY MEDICAL CARE PROFESSIONALS, I EXPECT THOSE ORDERS AND INSTRUCTIONS TO BE FOLLOWED. THIS IS FOR MY SAFETY AND WELL FARE AS WELL AS THE SAFETY AND WELFARE OF OTHERS

| Inmate Name | Register Number | Unit |
|---|---|---|
| THOMAS D. HANSEN | 22988-078 | 6 |

Inmate Signature: _Thomas W. Hansen_    Date: Aug 20, 2018

**CORRECTIONAL COUNSELOR:**

Efforts made to informally resolve and staff contacted: _____

No Informal Resolution - Issued BP-9 on _____ (Date)

Informally Resolved on _____    _____
                              Date                      Inmate Signature

Counselor's Signature: _____    Date: _____

Unit Manager Review: _____    Date: _____

I ASKED IF I COULD SEE MR. BROCKMAN, WAS DENIED AND ORDERED TO LEAVE MEDICAL. ON OCTOBER 1st I REPORTED TO MEDICAL FOR WOUND CARE AT 10:20 AS INSTRUCTED. WAITED OVER ½ HOUR, SAW PHARMACY WAS OPEN, NO STAFF ANYWHERE IN MEDICAL, SO WENT TO PHARMACY WINDOW TO ASK ABOUT HELP. NURSE RILLS WAS IN PHARMACY AND ABRUPTLY INTERRUPTED AND ASKED "WHY I WAS ASKING AT PHARMACY WINDOW" I EXPLAINED THERE WAS NO-ONE AVAILABLE AND WANTED SO GUIDANCE FROM MEDICAL STAFF. IT WAS EVIDENT MR. RILLS WAS IRRITATED by my REQUEST, EXITED THE PHARMACY, CHECKED ONE OFFICE AND THE BREAK ROOM FINDING NO ONE. SHE AGAIN CRITICISED ME FOR ASKING FOR ASSISTANCE AT THE PHARMACY WINDOW. She GRUMBLED THAT NURSE GIFFORD SHOULD BE THERE THEN TOLD ME TO WAIT FOR HER.

# EXHIBIT 6

# EXHIBIT 6

# EXHIBIT 6

➕ **Dallas Regional Medical Center**

| DRTX HEALTH INFORMATION MANAGEMENT 1011 N Galloway Ave Mesquite TX 75149 | Hansen, Thomas MRN: 105283310, DOB: 7/29/1951, Sex: M Adm: 8/30/2018, D/C: 9/7/2018 |

---

**Plan of Care by Kristine Lindsey, RN at 8/31/2018  8:35 AM (continued)**

| Daily care needs are met | Progressing | Patient will be injury free during hospitalization | Progressing[KL.1] |

Electronically signed by Kristine Lindsey, RN at 8/31/2018  8:35 AM
Attribution Key

KL.1 - Kristine Lindsey, RN on 8/31/2018  8:35 AM

---

**Consults by Abdul Qavi, MD at 8/31/2018 12:04 PM**

| Author  Abdul Qavi, MD | Service  Infectious Disease | Author Type  Physician |
| Filed  8/31/2018 12:17 PM | Date of Service  8/31/2018 12:04 PM | Status  Signed |
| Editor  Abdul Qavi, MD (Physician) | | |

<u>**INPATIENT CONSULT - INFECTIOUS DISEASE**</u>

**Name:** Thomas Hansen          **MRN:** 105283310
**DOB:** 7/29/1951              **Age:** 67 y.o.

**VISIT#:** 744000167970
**ADMISSION DATE:** 8/30/2018
**LOCATION:** DRTX 3S MED SURG
**ATTENDING:** Michael L Carroll, MD

**REFERRING PHYSICIAN:** Michael L Carroll, MD,**He personally asked me to see today**
**CONSULTING PHYSICIAN:** Abdul Qavi, MD
**DATE OF CONSULT:** 8/31/2018

**Reason for Consult:** Left lower extremity cellulitis and possible abscess

**History of Present Illness**

Thomas Hansen is a 67 y.o. male with past medical history of diabetes mellitus on metformin, history of staph infection on his left thigh 2 years back when he was incarcerated in Beaumont, TX. patient is an FCI inmate, admitted to Dallas Regional Medical Center yesterday with ulceration erythema and induration involving the right upper leg and an area of erythema on right lower thigh.: The patient is started with growing heel on the right upper leg, he scratched that on Friday and  2 days later he developed an abscess which was started draining. He also developed a small area of erythema in the right lower lateral thigh. A culture done reportedly showed MRSA as per Dr. Caroll.

**PAST MEDICAL HISTORY:**

Past Medical History:
Diagnosis                                                    Date
• Diabetes mellitus

---
Generated on 12/8/19 11:55 PM

# EXHIBIT 7

# EXHIBIT 7

# EXHIBIT 7



**VIBRA**
SPECIALTY HOSPITAL
OF DESOTO
2700 Walker Way · DeSoto, TX  75115-2008
Telephone: (972) 298-1100

**Patient to SIGN**

```
PAT #: 1703034              MR #: 000005321
HANSEN THOMAS
AGE:   67        DOB: 07/29/1951    SEX: M
RM/BED: 001/A             ADMIT: 09/07/18
ATT: BERRY LEONARD A              #: 173
```

## ADMISSIONS AGREEMENT / CONDITIONS OF TREATMENT

- **Agreement to Pay:**  I agree to pay all charges resulting from services by this hospital as requested by me personally, by a guarantor, or any attending physician(s) in accordance with the rates set out in the Hospital's Master Charge List (which is available for inspection now and during the course of my Hospital stay) including any balance due in excess of any amount paid by any third-party payor including the obligor under my healthcare insurance contract(s) or other healthcare coverage contract(s) which may be applicable ("healthcare coverage"). I understand that all charges not covered by verified healthcare coverage are due and payable on discharge. Provisional credit may be allowed for confirmed healthcare coverage benefits when assigned to the hospital and all such credits are subject to collection by the hospital unless coverage is subsequently denied in whole or in part. All charges for which third-party payors deny liability being agreed that the Hospital's Master Charge List shall control, even if my healthcare coverage company declines to make payment at the rates contained in that List. Except as otherwise provided by applicable State and Federal laws, I understand that I am responsible for any costs should the account be referred to an attorney or collection agency for collection. All delinquent accounts shall bear interest at the legal rate. I further authorize this hospital to apply any overpayments on any accounts to any other accounts that I or my guarantor have with this hospital. I understand that my third-party payor is subject to any agreements which such third-party payor may have with Hospital.

- **Health Plan Obligation:**  This hospital maintains a list of health plans with which it contracts. A list of such plans is available upon request from the financial office. The undersigned agrees that he/she is individually obligated to pay the full charges of all covered services rendered to them by the hospital if they belong to plan with which the hospital is not contracted. I understand that, in order to process healthcare claims promptly, all forms and information necessary for billing purposes must be presented within 24 hours from registration time in order to be honored and that the hospital is not obligated to bill any carrier that is not reported at the time of registration. I further understand that the hospital accepts no liability for failure to meet any pre/post admission certification procedures which may be required of me by my coverage carrier and I agree that any such procedures have or will be properly complied with by me.

- **Guarantor's Obligation:**  I, the undersigned, Guarantor herein, agree to guarantee payment and collection of all charges incurred by Patient. If Patient is unable to execute this document for any reason, I assume primary responsibility for payment of all charges incurred by Patient.



PAT #: 1703034              MR #: 000005321
HANSEN THOMAS
AGE:   67         DOB: 07/29/1951    SEX: M
RM/BED: 001/A             ADMIT: 09/07/18
ATT: BERRY LEONARD A            #: 173

- **Physicians of Independent Status:** I recognize that physicians, residents or medical students (under the supervision of physicians and/or residents), who furnish services to me during this admission may be <u>independent contractors</u> and may not be agents or employees of the hospital. I understand and agree that each of the above referenced practitioners, including emergency room physicians, physician assistants, nurse practitioners, radiologists, psychologists, pathologists, anesthesiologists, etc., who render professional services to me, may bill and collect independently for their services. I understand that their bills will be separate and apart from the hospital's billing and collections, or the hospital may bill on the physician's behalf, but subject to the authorizations granted by me in accordance with this agreement.

- **Hospital-Based Physicians:** For those physicians who may be agents or employees of the hospital, I, the undersigned, authorize, whether as agent or as patient, direct payment to the hospital of all insurance and plan benefits otherwise payable to or on behalf of the patient for this hospitalization or those services that may be outpatient services, including emergency services if rendered, at a rate not to exceed the hospital's regular charges. It is agreed that payment to the hospital pursuant to this authorization by an insurance company or health plan shall discharge said insurance company or health plan of any and all obligations under the policy to the extent of such payment. It is understood by the undersigned that he/she is responsible for charges not covered by this assignment.

- **Assignment of Benefits:** I hereby authorize direct payment to Hospital of benefits provided under any healthcare plan or medical expense policy including motor vehicle insurance, otherwise due or payable to me or on my behalf, provided such amount shall exceed the hospital's charges as set forth in the Hospital's Master Charge List. In the event I am entitled to benefits payable for physician services, these benefits are hereby assigned to the physicians providing those services. I understand that I am personally responsible to this hospital and/or physician for charges not covered by this assignment.

- **Patient's Certification, Authorization to Release Information and Payment Request:** I certify that the information given by me in applying for payment under Title XVIII of the Social Security Act is correct. I authorize any holder of medical or other information about me to release to the Social Security Administration or its intermediate carriers any information needed for this or a related Medicare claim, except as otherwise provided by applicable State or Federal laws. I request that payment of authorized benefits be made on my behalf. I assign the benefits payable for physician's services to the physician or organization furnishing the services and authorize such physician or organization to submit a claim to Medicare for payment, on my behalf.

  I, the undersigned, understand as informed, that I will reach my 61st Medicare day on _____. It is my responsibility to reimburse this facility 20% co-pay balance of my bill should I be a patient of this facility beyond 60 days. This amount is due only if no supplemental coverage exists or the supplemental coverage does not include rehabilitation services.




```
PAT #: 1703034              MR #: 000005321
HANSEN THOMAS
AGE:    67      DOB: 07/29/1951   SEX: M
RM/BED: 001/A                  AMIT: 09/07/18
ATT: BERRY LEONARD A              #: 173
```

- **Valuables Release:** I hereby release this hospital and any of its employees from any liability that may be incurred from the loss or damage of valuables and personal items that I have kept in my possession while in the hospital as a patient unless they are deposited in the hospital safe. The liability of the hospital for loss of any personal property, which is deposited with the hospital for safekeeping, is limited by statute, unless a written receipt for a greater amount has been obtained from the hospital by the patient.

- **Authorization for Release of Medical Information:** I hereby authorize the disclosure of medical record information to entities which are or may be responsible for all or any portion of the charges incurred, including but not limited to insurance companies or their agents or designees, worker's compensation carriers, medical or utilization review organizations.

  I further authorize the hospital, in its discretion, to disclose medical record information to any hospital, nursing home, physician, or other health care service which may assume continuing patient care or to other persons/organizations in order to obtain, and/or maintain licensure, accreditation, or certification, to the extent provided by law.

- **Informed Consent:** I understand that it is customary, absent emergency or extraordinary circumstances, that no substantial and significant procedures are performed upon a patient unless and until the patient has had an opportunity to discuss them with the physician or other health professional to the patient's satisfaction. The patient is under the care and supervision of their attending physician and it is the responsibility of the hospital and its nursing staff to carry out the instruction of such physician.

  I understand that I will be informed of the risks connected with a particular procedure or treatment which a competent physician in similar circumstances would reasonable disclose (KS, CO, FL) and which provide a reasonable individual with a general understanding of the procedure or treatment, possible alternative procedures and treatments and substantial risks inherent in the proposed procedure or treatment (FL) or which a patient in my circumstances would reconsider relevant in making a decision concerning whether to undergo the treatment or procedure (LA), and the name of the person will carry out the procedure or treatment. It is the responsibility of the patient's physician to obtain the patient's informed consent when required, to medical or surgical treatment, special diagnostic or therapeutic procedures, or hospital services rendered to the patient under the general and special instructions of the physician.

  I understand that each patient has the right to consent, or to refuse consent, to any proposed *procedure or therapeutic course.*

  I understand that no patient will be involved in any research or experimental procedure without the patient's full knowledge and consent.

- **Consent for Photograph and/or Filming:** I authorize the facility to take a photograph of the below named patient for the purpose of identification. I have been advised that if a patient leaves the facility and is considered to be at risk, the photograph may be released to appropriate authorities to assist in locating the patient.

PAT #: 1703034          MR #: 000005321
HANSEN THOMAS
AGE:    67      DOB: 07/29/1951   SEX: M
RM/BED: 001/A                 AMIT: 09/07/18
ATT: BERRY LEONARD A              #: 173



I understand that from time to time, it is important to photograph/videotape or mechanically record a patient's particular procedure or treatment for the advancement of medical care and education, and that reasonable effort will be made to keep all materials confidential if such recordings of my (the patient's) procedure or treatment are made. I understand that I may withdraw this consent at anytime except to the extent those actions have been taken in reliance thereon.

- **Nondiscrimination:** Pursuant to Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act of 1973 and the Age Discrimination Act of 1975, this hospital does not discriminate in the provision of services on the basis of race, color, national origin, disability, age, gender, economic status, educational background, religion, ancestry, sexual orientation or marital status or the source of payment for care.

- **Confiscation of Marijuana:** I understand if marijuana and/or extracts from the cannabis plant are *legal in this state, Vibra Specialty Hospital of DeSoto is subject to federal law, under which such substances are unlawful. Therefore, I agree and understand that I cannot bring such substances into Vibra Specialty Hospital of DeSoto, and I further agree and understand that if I do bring such substances into Vibra Specialty Hospital of DeSoto and it is discovered, Vibra Specialty Hospital of DeSoto staff will* **confiscate and may destroy** *such substances.*

- **Education:** I understand that this hospital may serve as an educational site for residents and students. I give my consent for residents and students of approved programs to observe services provided to me, and to participate in my care and treatment under the supervision of the attending physician and the hospital staff.

- **Physician availability:** A physician is not present in the hospital 24 hours per day, 7 days per week but is on call 24 hours per day, 7 days a week. In the event that you develop a medical emergency that cannot be handled in house your physician will be notified and you may be transferred to an acute care hospital emergency room for treatment based on the medical emergency.

**The undersigned certifies that they have read the foregoing, received a copy thereof, and is the patient, the patient's legal representative, or is duly authorized by the patient as the patient's general agent to execute the above and accept its terms.**

| | Date | Time |
|---|---|---|
| Signature of Patient or Patient Representative | 9-7-18 | 1900 |
| Printed Name of Patient or Patient Representative: HANSEN THOMAS | | |
| Signature of Guarantor | Date | Time |
| Printed Name of Guarantor | | |
| Signature of Witness: Arey Joy RN | 9-7-18 | 1900 |
| Printed Name of Witness: Arey Joy | | |

# EXHIBIT 8

# EXHIBIT 8

# EXHIBIT 8

INFORMED CONSENT: PICC LINE

**VIBRA**
SPECIALTY HOSPITAL

PAT #: 1703034          MR#: 000005321
HANSEN THOMAS
AGE: 67      DOB: 07/29/1951    SEX: M
RM/BED: 0021A              ADMIT: 09/07/18
ATT DR: BERRY LEONARD A        #: 173

## INFORMED CONSENT SPECIAL PROCEDURE
## PICC LINE

TO THE PATIENT:  You have the right, as a patient, to be informed about your condition and the recommended medical procedure to be used so that you may make the decision whether or not to undergo the procedure after knowing the risks and hazards involved. This disclosure is not meant to scare or alarm you; it is simply an effort to make you better informed so you may give or withhold your consent to the procedure.

I voluntarily request Dr. _Berry_ _____ as my physician, and such associates, technical assistants and other health care providers as they deem necessary, to treat my CONDITION which has been explained to me as:
Poor venous access and/or need for long term intravenous access.

I understand that the following medical procedure is planned for me and I voluntarily consent and authorize this PROCEDURE:
PERIPHERALLY INSERTED CENTRAL CATHETER

LOCAL anesthetic medication for the relief and protection form localized pain during the planned and additional procedures

I understand that my physician may discover the need for other or different procedures than those planned. I authorized my physician, and such associates, technical assistants and other health care providers to perform such other procedures which are advisable in their professional judgement

Just as there may be risks and hazards in continuing my present condition without treatment, there are also risks ans hazards related to the performance of the procedure planned for me. I realize that common to medical procedures are the potential for infection, blood clots in veins and lungs, hemorrhage, allergic reactions, I also realize that the following additional risks and hazards may occur in connection with this particular procedure: hematoma; catheter mal-position; and the minimal risk of air embolism.

The alternatives to the procedure and the probability of success have been fully explained to me, and include:

No other alternatives available.

Alternative(s): _____

Risks and benefits of alternatives.

(Continued on Back)

Internal Form 114

Page 1

PAT #: 1703034
HANSEN THOMAS
AGE: 67    DOB: 07/29/1951    SEX: M
RM/BED: 0027A    ADMIT: 09/07/18
ATT DR: BERRY LEONARD A    #: 17:

I have been given the opportunity to ask questions about my condition, alternative forms of local anesthetics and treatment, risks of non-treatment, the procedure to be used, and the risks and hazards involved, and I believe that I have sufficient information to give this informed consent. I acknowledge that no guarantee or assurance has been made to me regarding results, and I assume described risks. I understand the practice of medicine is not an exact science.

**PATIENT SIGNATURE:**

I certify that this form has been fully explained to me, that I have read it or have had it explained to me, that the blank spaces have been filled in and that I understand its contents. I am satisfied with the explanation, and my CONSENT hereby is given voluntarily.

_____    _____    __/__/__
Signature of Patient or legally responsible person    Relationship to Patient    Date

Telephone Consent (if applicable):

_____    _____    __/__/__
Given by    Relationship to Patient    Date

Date: __/__/__

_____
Nurse

Date: __/__/__

Witness: _____

_____    9/8/17
Nurse's Signature    Date

I have explained the matters indicated above relating to the procedure, local anesthetic and the risk, consequences and alternatives. The patient and/or the relative indicated understanding and consented to the procedures described above.

Physician's Signature: _____ Date: 9/8/18    Time: 1600

Internal Form 114

;1    PAT #: 1703034    MR#: 000005321
M    HANSEN THOMAS
8    AGE: 67    DOB: 07/29/1951    SEX: M
    RM/BED: 0027A    ADMIT: 09/07/18
    ATT DR: BERRY LEONARD A    #: 173



**RECEIVED**

MAY 2 1 2021

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

May 20th, 2021

**CLERK OF COURT**
United States District Court
1100 Commerce Street, Room 1452
Dallas, TX 75242
Phone (214) 753-2200

**RE: Case No. 3:21-cv-1003-C-BN**
Thomas Hansen vs United States of America
AMENDED Federal Tort Complaint (FTCA) 28 USC §§ 2671-2680

Dear Clerk of Court:

Enclosed please find the original and two (2) conform copies of the above-referenced AMENDED FTCA Complaint with attached Exhibits, and U.S. Postal Money Order in the amount of $402.00 to the Clerk of Court.

I have enclosed a self-addressed stamp envelope to return one (1) copy with the court stamp filing date placed in the upper right area of FTCA Complaint for my records.

Thank you again for your time and assistance in the processing and filing the above-reference complaint, I remain.

Respectfully,

**THOMAS HANSEN**
105 Chapeg Street
Nederland, TX 77627
Phone (409) 300-1123
Email: thomasdhansen51@gmail.com

w/encls: US Postal Money Order $402.00
        Amended FTCA Complaint w/Exhibits (3) copies

File



